# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| WILLIAM FRENCH, <br><br> Plaintiff, <br> vs. <br><br> CUMMINS FILTRATION, INC., <br><br> Defendant. | No. C 11-3024-MWB <br><br> **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

In this action, plaintiff William French asserts a claim of retaliation by his employer, defendant Cummins Filtration, Inc., in firing him for filing a civil rights complaint with the Iowa Civil Rights Commission (ICRC), in violation of the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216. Cummins asserts that French was fired after Cummins discovered, from an investigation of a co-worker's complaint, that French had been leaving work early pursuant to his doctor's work restrictions, but had not been participating in "pool therapy" as his doctor had directed.[1] Trial in this matter is currently set to begin on October 15, 2012.

The essential facts here, both disputed and undisputed, are the following. On February 18, 2008, French, who had been employed with Cummins for nineteen years, filed a complaint with the ICRC alleging that a new work schedule would violate work restrictions imposed by his doctor after he suffered heart problems and required bypass

---

[1] On July 19, 2012, Magistrate Judge Leonard T. Strand denied French's motion for leave to amend his complaint to add a claim of disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), on the ground that French was attempting to add an entirely new claim to this case, without good cause, long after the deadline for amendments had passed. *See* Order (docket no. 31).

surgery. Shortly thereafter, on March 11, 2008, French presented to Cummins's health clinic a medical restriction, dated March 10, 2008, indicating that French would "need to be available for therapies @ 4:00 p.m. daily." Defendant's Appendix, 109. Cummins honored the restriction by placing French on a 7:15 a.m. to 3:15 p.m. shift, instead of a 9:15 a.m. to 5:15 p.m. shift,[2] but sought clarification from French's doctor. On March 19, 2008, Cummins received a clarification from French's doctor stating that French was to attend "[p]ool therapy daily at 4:30 p.m. under the supervision of YMCA instructor x 6 months." Defendant's Appendix at 111. Although Cummins's further investigations revealed no YMCA in the area that provided "pool therapy," Cummins still honored French's work restrictions.

French maintains that he was never made aware of the March 19, 2008, clarification, which he argues was obtained from his doctor without his consent, and Cummins has not pointed to any evidence that French knew of that version of his restrictions until June. French also asserts that the "therapy" that he had discussed with his doctor prior to March 11, 2008, was "walking" at home after work and doing water aerobics (or "aquasizing") at his local swimming pool after work when the pool opened in June. He also maintains that the "investigation" or "clarification" of his work restrictions was instituted by the human resources manager at his plant, Maria Jensen (formerly Maria Bailey), because she was annoyed about his ICRC complaint. French argues that Jensen's annoyance is evident from a March 18, 2008, e-mail that she sent to Cummins's clinic staff directing them to investigate, which stated, in pertinent part,

> Bill WANTS to walk at 3:15 p.m. in the afternoon—after work—Bill WANTS to come in early at 7:15 NOT 9:15

---

[2] At the time, the regular shift for employees without health restrictions on hours was 7:15 a.m. to 5:15 p.m. According to Cummins, employees with work restrictions worked the last eight hours of the shift, because it was easier to hold over an employee from the prior shift to cover the first two hours than to get a person from the next shift to come in two hours early.

2

> which is his scheduled time. Hence, I want to be sure that he has scheduled therapy with a therapist and that the "therapy" stated on the March 6th [sic] form does not mean Bill's walking time. Please elaborate and update me.

Plaintiff's Appendix at 118. The record does not reflect that there was ever any meeting of French, his doctor, and Cummins's clinic staff or human resources staff to attempt to ascertain whether there was any confusion about French's "therapy" requirements or necessary accommodations.

Eventually, in June 2008, one of French's co-workers, who wanted hours similar to his, complained that French was not attending his therapy sessions. On June 18, 2008, Jensen questioned French, and, when French was shown the March 19, 2008, statement of his need for time off, French admitted that he had not been going to "pool therapy" at a YMCA. French was suspended on June 19, 2008, pending investigation, then terminated on June 24, 2008.

This case is before me on Cummins's May 16, 2012, Motion For Summary Judgment (docket no. 21). After extensions of time for French's Resistance (docket no. 26) and Cummins's Reply (docket no. 32), the Motion For Summary Judgment became ripe on July 31, 2012. Although French requested oral arguments on the Motion For Summary Judgment in his Resistance, I have not found oral arguments to be necessary to the disposition of the motion.

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment

as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).[3]

---

[3] In its *en banc* decision in *Torgerson*, the Eighth Circuit Court of Appeals expressly rejected the notion, expressed in numerous panel decisions, that summary judgment in employment discrimination cases is disfavored or is considered under a separate standard, citing *Reeves* and *Celotex*. Instead, the court held as follows:

> Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to

4

The overarching question on Cummins's Motion For Summary Judgment is whether French can generate a genuine issue of material fact that Cummins's proffered legitimate reason for his termination—lying about leaving work early for "pool therapy," but not pursuing such "pool therapy"—is a pretext for retaliation. Cummins argues that a termination four months after French's ICRC complaint does not have sufficient temporal proximity to generate an inference of retaliatory intent and that French has nothing more than that but self-serving speculation. Cummins argues that it honestly believed that French had violated its company Code of Conduct by lying about needing to leave work early for "pool therapy," but then not pursuing such therapy. French argues that it was not until he filed his ICRC complaint that his work restrictions were scrutinized; that he was never given a proper opportunity to explain his side of the story when he was accused of abusing his work restrictions; that Cummins obtained information from his doctor without his knowledge and consent and in violation of HIPAA regulations; that Jensen disparaged his "therapy" requirements and failed to engage in any interactive process to determine the extent of his restrictions and requirements for reasonable accommodation; and that Cummins made no attempt at a true investigation of the co-worker's complaint that French was misusing his hours restrictions, but considered his termination a foregone conclusion, because Jensen prepared a "write up" before even talking to French.

The ICRA prohibits retaliation, *inter alia*, against any person who "has filed a complaint" under the Act. IOWA CODE § 216.11(2). As the Iowa Supreme Court has explained,

> To establish a prima facie case of retaliation under the ICRA, a plaintiff must show (1) he or she was engaged in

---

> determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson*, 643 F.3d at 1043.

> statutorily protected activity, (2) the employer took adverse employment action against him or her, and (3) there was a causal connection between his or her participation in the protected activity and the adverse employment action taken. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004); *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 861-62 (Iowa 2001).

*Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006).[4] Here, French engaged in statutorily protected activity when he filed his ICRC complaint and Cummins subsequently terminated him, which is plainly adverse action against him. *Id*. Thus, the question here is the third element, causal connection.

As to the causal connection element, the standard is high: "[T]he 'causal connection' . . . must be *a 'significant factor' motivating* the adverse employment decision." *City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 535 (Iowa 1996) (emphasis added) (quoting *Hulme v. Barrett*, 480 N.W.2d at 40, 42 (Iowa 1992)); *but see EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 693-94 (8th Cir. 2012) (observing that "'[t]his court analyzes ICRA retaliation claims under the same method as federal retaliation claims,'" quoting *Young-Lsee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011), and concluding that the plaintiff "must demonstrate that the protected conduct in which she engaged 'was *a determinative factor* in the employer's materially adverse employment action,'" quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 416 (8th Cir. 2010), with emphasis added here). Thus, "mere coincidence of timing does not conclusively establish this element," but the timing of the adverse action, combined with all the other

---

[4] As the Iowa Supreme Court has elsewhere explained, "Because the ICRA is in part modeled after Title VII, we have traditionally looked to federal law for guidance in interpreting it." *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005). "Nonetheless, the decisions of federal courts interpreting Title VII are not binding upon [the Iowa Supreme Court] in interpreting similar provisions in the ICRA." *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004)

circumstances in the case, may suffice. *Boyle*, 710 N.W.2d at 750. According to the Eighth Circuit Court of Appeals, the "key question" in deciding whether the causal connection element has been met, for either a Title VII or an ICRA retaliation claim, is "'whether [the plaintiff] presented sufficient evidence to support a conclusion that [the employer's] proffered reason for [adverse action against the employee] was [a] pretext for a retaliatory motive.'" *CRST Van Expedited, Inc.*, 676 F.3d at 694 (quoting *Alvarez*, 626 N.W.2d at 416).

Although I believe that the inferences of retaliatory motive, based on the evidence cited by French, are weak, that is not the proper basis for summary judgment. *See Torgerson*, 643 F.3d at 1042-43. Rather, viewing the evidence in the light most favorable to French, and taking the record as a whole, I cannot say that no rational trier of fact could find in French's favor. *Id.* There appears to be, at least at first blush, a four-month gap between the protected activity, filing of French's ICRC complaint, and the allegedly retaliatory adverse employment action, his termination, a timeframe that would surely approach the outer limits of "coincidence of timing," and certainly would not be enough to establish the required "causal connection" standing alone. *See Boyle*, 710 N.W.2d at 750. However, there may be more. *Id.* French has pointed to evidence raising inferences that a retaliatory motive infected Cummins's actions from shortly after he filed his ICRC claim until his termination, including Cummins's (that is, Jensen's) immediate doubt of the validity of his claimed "therapy"; Cummins's investigation of that "therapy," without involving French and his doctor simultaneously in an interactive process to determine the extent of his restrictions and what accommodations were reasonable under the circumstances; and evidence that the result of Cummins's investigation of the co-worker's complaint may have been a foregone conclusion, even if Jensen did talk to French about the complaint before terminating him. More specifically, although no "failure to accommodate" claim is at issue here, the Eighth Circuit Court of Appeals has recognized for some time that "[t]he failure of

an employer to engage in an interactive process to determine whether reasonable accommodations [of an employee's disabilities] are possible is prima facie evidence that the employer may be acting in bad faith." *Fjellstad v. Pizza Hut of Am.*, 188 F.3d 944, 952 (8th Cir. 1999); *Walsted v. Woodbury Cnty, Iowa*, 113 F. Supp. 2d 1318, 1342 (N.D. Iowa 2000) (also concluding that an employer's failure to engage in the interactive process gives rise to an inference of illicit motive or bad faith).

Cummins is not entitled to summary judgment on French's retaliation claim.

THEREFORE,

1. Cummins's May 16, 2012, Motion For Summary Judgment (docket no. 21) is **denied**; and

2. Cummins's August 9, 2012, Motion To Continue Trial (docket no. 36), which was premised on concerns that the parties should not have to engage in costly pretrial preparation while Cummins's Motion For Summary Judgment was pending and that disposition of the Motion For Summary Judgment might prompt resolution of the case without the need for trial, is also **denied**.

**IT IS SO ORDERED**.

**DATED** this 15th day of August, 2012.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA